UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BAKERY AND CONFECTIONERY UNION AND
INDUSTRY INTERNATIONAL PENSION FUND

     -and-

BOARD OF TRUSTEES OF THE BAKERY AND
CONFECTIONERY UNION AND INDUSTRY
INTERNATIONAL PENSION FUND,

                    Plaintiffs,

    -against-

MRS. MAXWELL'S BAKERY, INC.,

                  Defendant.
-----------------------------------------------------------------x

**REPORT &
RECOMMENDATION**
21-CV-308-RPK-SJB

**BULSARA, United States Magistrate Judge:**

The Bakery and Confectionery Union and Industry International Pension Fund

("the Fund") and its Board of Trustees ("the Trustees") (collectively, "Plaintiffs")

commenced this action on January 20, 2021 against Mrs. Maxwell's Bakery, Inc. ("Mrs.

Maxwell's Bakery" or "Defendant") for violations of the Employee Retirement Income

Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"),[1] seeking to recover delinquent

contributions and obtain payment based on Defendant's withdrawal from the Fund, in

addition to interest, liquidated damages, and attorney's fees and costs. (Compl. dated

Jan. 20, 2021 ("Compl."), Dkt. No. 1). Mrs. Maxwell's Bakery failed to answer or

otherwise respond to the Complaint. On April 8, 2021, the Clerk of Court entered a

default against Defendant. (Entry of Default dated Apr. 8, 2021, Dkt. No. 7). Plaintiffs

---

[1] Title 29 includes the Multiemployer Pension Plan Amendments Act of 1980
("MPPAA"), which "adds rights and remedies to those contained in" ERISA. *Local 807
Labor-Mgmt. Pension Fund v. Owens Trucking, Inc.*, 585 F. Supp. 616, 617 (E.D.N.Y.
1984); *see* 29 U.S.C. § 1001a.

filed a motion for default judgment on March 11, 2022.  (Mot. for Default J. dated Mar. 11, 2022 ("Pls.' Mot."), Dkt. No. 16).  The motion for default judgment was referred by the Honorable Rachel P. Kovner on March 14, 2022 to the undersigned for a report and recommendation.  (Order Referring Mot. dated Mar. 14, 2022).

For the reasons described below, the Court respectfully recommends Plaintiffs' motion for default judgment be granted in part and denied in part and damages, interest, and attorney's fees and costs be awarded as detailed herein.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Fund is an employee pension benefit plan within the meaning of sections 3(2) and 3(3) of ERISA, 29 U.S.C. § 1002(2)–(3), with its principal place of business at 10401 Connecticut Avenue, Kensington, Maryland 20895.  (Compl. ¶¶ 4, 6).  The Fund is administered in accordance with the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c)(5) ("LMRA").  (Id. ¶ 4).  The Trustees are fiduciaries within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  (Id. ¶ 5).  Mrs. Maxwell's Bakery, Inc. is a New York corporation doing business at 2700 Atlantic Avenue, Brooklyn, New York 11207, (Id. ¶ 9; Summons dated Jan. 20, 2021, Dkt. No. 2), and is an employer affecting commerce under ERISA, 29 U.S.C. § 1002(5), (11), and (12).  (Compl. ¶ 8).

The Fund is governed by an amended Agreement and Declaration of Trust ("Trust Agreement") through which the Fund receives contributions and provides benefits for eligible employees.  (Agreement & Decl. of Trust ("Trust Agreement"), attached as Ex. A to Decl. of Steven D. Brock ("Brock Decl."), Dkt. No. 16).[2]  Section 6 of

---

[2] As discussed below, by Article XIV and Schedule A of its collective bargaining agreements, Mrs. Maxwell's Bakery "agree[d] to be bound as a party to all the terms and provisions of" the Trust Agreement.  (Compl. ¶ 11).

Article V, which covers employer withdrawal liability, provides that the Trustees "shall have full authority to adopt rules and regulations setting forth procedures for the determination and collection of withdrawal liability, which shall be binding on the Employers." (Trust Agreement, art. V, § 6).

By letter dated April 3, 2019, the Fund notified Mrs. Maxwell's Bakery that it had "effected a total withdrawal from the Fund by ceasing contributions . . . , thereby subjecting it to withdrawal liability." (Demand for Payment of Withdrawal Liability for Mrs. Maxwell's Bakery, Inc. dated Apr. 3, 2019 ("Demand for Payment"), attached as Ex. J to Brock Decl., Dkt. No. 16). The Fund determined the withdrawal liability to be $349,995 and demanded payment under a schedule of $1,997 per month for a total of 240 months, with the first payment due on June 1, 2019. (*Id.*; Compl. ¶¶ 24–25). The letter provided that "[f]ailure to begin payment of withdrawal liability as required may constitute a default, which will then entitle the Fund to require immediate payment of the full amount of withdrawal liability owed." (Demand for Payment at 2). More than 60 days passed and Mrs. Maxwell's Bakery failed to pay any of the amounts due. (Compl. ¶¶ 26, 28).

Mrs. Maxwell's Bakery is a party to a series of collective bargaining agreements ("CBAs") with the Bakery, Confectionery, Tobacco Workers and Grain Millers International, Local 53 ("Local 53") for the period of February 1, 2011 to January 31, 2019. (*Id.* ¶ 10; *see* Associated Specialty Bakers of New York Standard Contract, February 1, 2011–January 31, 2015 ("2011–2015 CBA"), attached as Ex. B-1 to Brock Decl., Dkt. No. 16; Associated Specialty Bakers of New York Standard Contract, February 1, 2015–January 31, 2019 ("2015–2019 CBA"), attached as Ex. B-3 to Brock

Decl., Dkt. No. 16).  Pursuant to each CBA, Defendant was required to remit contributions to the Fund.  (2011–2015 CBA & 2015–2019 CBA, art. XIV, Schedule A).

In the event of a breach of these provisions, Mrs. Maxwell's Bakery is obligated to pay: (1) the unpaid contributions and withdrawal liability; (2) interest on the unpaid contributions; (3) liquidated damages equal to the greater of (a) the interest awarded or (b) twenty percent of the unpaid contributions; and (4) attorney's fees and costs. (Delinquent Employer Contribution Collection Policies ("Collection Policies"), attached as Ex. D to Brock Decl., Dkt. No. 16, art. III(A), (B), (C)).

Pursuant to their rights under the respective CBAs, Plaintiffs conducted an audit of payroll records for the period of January 1, 2014 through December 31, 2016. (Compl. ¶ 13).  The audit revealed that Mrs. Maxwell's Bakery, Inc. failed to make $568.29 in contributions, (*id.* ¶ 14), which remains unpaid.  (*Id.* ¶ 16).

On January 20, 2021, Plaintiffs commenced this action alleging violations of section 515 of ERISA, 29 U.S.C. § 1145.  (*Id.* ¶ 38–43).  Mrs. Maxwell's Bakery was served with a summons and Complaint on February 4, 2021 via the Office of the Secretary of State of New York.  (Aff. of Service dated Feb. 8, 2021, Dkt. No. 5).  Despite this service, Mrs. Maxwell's Bakery failed to appear, answer, or otherwise respond to the Complaint.  Plaintiffs sought a certificate of default against Mrs. Maxwell's Bakery, Inc. on April 5, 2021, (Req. for Certificate of Default, Dkt. No. 6), which was granted by the Clerk of Court on April 8, 2021.  (Entry of Default, Dkt. No. 7).

On June 8, 2021, Plaintiffs moved for default judgment.  (Mot. for Default J. dated June 8, 2021, Dkt. No. 8)  On December 3, 2021, this Court issued an Order to Show Cause directing Plaintiffs to explain their failure to mail their motion papers to Mrs. Maxwell's Bakery's last known business address in compliance with Local Civil

Rule 55.2.  (Order to Show Cause dated Dec. 3, 2021).  Plaintiffs withdrew their motion on December 15, 2021, (Notice dated Dec. 15, 2021, Dkt. No. 10), and filed a renewed motion for default judgment correcting this deficiency on December 28, 2021.  (Mot. for Default J. dated Dec. 28, 2021, Dkt. No. 12).  This Court subsequently issued an Order advising Plaintiffs that incorrect exhibits were erroneously attached in support of the motion.  (Order dated Mar. 9, 2022).  In response, Plaintiffs again withdrew their motion for default judgment, (Notice of Motion to Withdraw dated Mar. 10, 2022, Dkt. No. 15), and filed a renewed motion for default judgment on March 11, 2022.  (Pls.' Mot.).  Judge Kovner referred the motion to the undersigned for report and recommendation.  (Order Referring Mot. dated Mar. 14, 2022).

Plaintiffs' motion seeks judgment against Mrs. Maxwell's Bakery for (1) $95,952.17, which consists of: (a) $5,170.09 in delinquent contributions, which includes contributions due following an audit and additional contributions due under the Fund's Rehabilitation Plan; (b) $1,136.97 in interest on delinquent contributions; (c) $61,907 in delinquent withdrawal liability payments for the period of June 1, 2019 through December 31, 2021; (d) $6,296.71 in interest on unpaid withdrawal liability payments; (e) $12,381.40 in liquidated damages; and (f) $9,060 in attorney's fees and costs; as well as (2) post-judgment interest at the statutory rate; and (3) an order requiring Mrs. Maxwell's Bakery to remit any subsequent withdrawal liability monthly installment payments.  (Proposed Judgment, Dkt. No. 16).  Mrs. Maxwell's Bakery failed to respond to the motion for default judgment.

## DISCUSSION

I.    Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a default against Mrs. Maxwell's Bakery on April 8, 2021. (Entry of Default, Dkt. No. 7).

The next question, before reaching liability or damages, is whether Mrs. Maxwell's Bakery's conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, Mrs. Maxwell's Bakery's failure to respond to the Complaint demonstrates its default was willful. *See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and

granting plaintiff default judgment against them).  A copy of the summons and

Complaint were served via the Office of the Secretary of State of New York on February

8, 2021.  (Aff. of Service dated Feb. 8, 2021, Dkt. No. 5).  The motion for default

judgment and supporting papers were also served via mail to Mrs. Maxwell's Bakery's

last known business address.[3]  (Aff. of Service dated Mar. 14, 2022, Dkt. No. 17).

Notwithstanding this notice and service, it did not respond to the Complaint, did not

appear, and has not in any way attempted to defend itself.

As to the second factor, Plaintiffs would be prejudiced if the motion for default

judgment is denied, "as there are no additional steps available to secure relief in this

Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL

5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order

(Jan. 26, 2009); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015

WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation)

(finding the prejudice element was met because "[w]ithout the entry of a default

judgment, Plaintiffs would be unable to recover for the claims").  Third, the Court

cannot conclude there is any meritorious defense to Plaintiffs' allegations because Mrs.

Maxwell's Bakery did not appear and no defense has been presented to the Court.  *E.g.*,

---

[3] Though Plaintiffs properly appended to their application a proposed form of default judgment, they neglected to append the Clerk's certificate of default and a copy of the claim to which no response has been made in compliance with Local Rule 55.2(b). Despite this failure, and in light of the fact that Plaintiffs have now moved for default judgment on three separate occasions, the Court nonetheless considers the motion.  In doing so, the Court notes that the Complaint was properly served on an authorized agent at the New York State Department of State's office, and the motion papers were mailed to the last known business address in accordance with Local Rule 55.2(c).  Mrs. Maxwell's Bakery had sufficient notice of the present litigation.

*United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

As a result, all three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017).

A.    Withdrawal Liability

ERISA, as amended by the MPPAA, was enacted "to ensure that workers' retirement benefits would actually be available during retirement." *I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92-CV-597, 2002 WL 999303, at *9 (S.D.N.Y. May 15, 2002), *aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850 (2d Cir. 2003).  The MPPAA is intended "to protect the interests of participants and beneficiaries in financially distressed multiemployer plans." *ILGWU Nat'l Ret. Fund v.*

8

*Levy Bros. Frocks, Inc.*, 846 F.2d 879, 880 (2d Cir. 1988) (quotations omitted).  Under the MPPAA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under [the statute] to be the withdrawal liability."  29 U.S.C. § 1381(a); *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Laidlaw Indus., Inc.*, 745 F. Supp. 1016, 1025 (D. Del. 1990) ("[T]he statutory scheme of MPPAA envisions this result.  Congress intended to protect the multiemployer pension plans from withdrawals aimed at evading or avoiding an employer's responsibility to such plans.").  In other words, an "employer is required to continue funding its proportionate share of the plan's unfunded vested benefits" in order "to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan."  *Levy Bros. Frocks, Inc.*, 846 F.2d at 881 (quotations omitted).

A complete withdrawal occurs when an employer: "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."  29 U.S.C. § 1383(a); *see, e.g.*, *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *3 (E.D.N.Y. July 31, 2015), *report and recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).  Under the Trust Agreement, a failure to remit contributions amounts to ceasing to have an obligation to the Fund.  (Trust Agreement, art. XII, § 1).  Plaintiffs allege that, on or about November 24, 2018, Mrs. Maxwell's Bakery failed to make required contributions.  (Demand for Payment at 1; Compl. ¶ 22; Brock Decl. ¶ 20).  Since Mrs. Maxwell's Bakery failed to pay contributions, it ceased to have an obligation to contribute under the plan, and this is sufficient to trigger withdrawal liability.  *E.g.*, *N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 168 (2d Cir. 2022) ("The

Fund . . . is organized as a 'multiemployer plan' regulated by ERISA, under which [a contributing employer] was subject to significant 'withdrawal liability' if it ceased to make contributions."), *cert. denied*, 142 S. Ct. 2876 (2022); *Trs. of Loc. 531 Pension Plan v. Corner Distribs., Inc.*, No. 07-CV-529, 2008 WL 2687085, at *4 (E.D.N.Y. July 8, 2008) (adopting report and recommendation) ("The [MPPAA] requires employers who cease contributing to a multiemployer pension fund to pay 'withdrawal liability[.]'" (quoting 29 U.S.C. § 1381)).

B. <u>Delinquent Contributions</u>

Plaintiffs have established a violation of ERISA by Mrs. Maxwell's Bakery based on its failure to make contributions pursuant to the 2011–2015 CBA and the 2015–2019 CBA. Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions." 29 U.S.C. § 1145; *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023, 2015 WL 1042279, at *8 (E.D.N.Y. Mar. 9, 2015) (noting that, under section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement"). The Trustees of a plan may, pursuant to section 502, bring an action to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–14 (2d Cir. 1990). To establish a violation of section 515, the Trustees must show that Mrs. Maxwell's Bakery (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013 v. Precision Abstract, LLC*, No. 16-CV-4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017), *report and recommendation adopted*, 2017 WL 4296740, at *1 (Sept. 26, 2017). Mrs. Maxwell's

Bakery is alleged to be an employer in an industry affecting commerce within the meaning of ERISA, and the Fund is an employee pension benefit plan as defined by ERISA. (Compl. ¶¶ 4, 8).

Plaintiffs allege that Mrs. Maxwell's Bakery failed to make required benefit contributions during the period of January 1, 2014, to December 31, 2016, as reflected in the audit completed on August 16, 2017, and as required by the CBAs. (Compl. ¶¶ 13–14; Report of Independent Certified Public Accountants dated Aug. 16, 2017 ("Audit Report"), attached as Ex. C to Brock Decl., Dkt. No. 16, at 1–2). On August 24, 2017, the Fund sent a copy of the audit report to Mrs. Maxwell's Bakery and demanded payment of the delinquent contributions. (Brock Decl. ¶ 12; Letter to Mrs. Maxwell's Bakery dated Aug. 24, 2017, attached as Ex. C to Brock Decl., Dkt. No. 16, at 11–12). The Fund sent follow-up letters and emails from September 25, 2017 through August 6, 2019. (Brock Decl. ¶ 12; Correspondence sent to Mrs. Maxwell's Bakery, attached as Ex. C to Brock Decl., Dkt. No. 16, at 1–10). Payments were not made. (Compl. ¶ 16). These allegations, on default, are sufficient to establish ERISA liability. *See, e.g.*, *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3–*4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038, at *1 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (recommending that the employer's failure to make contributions to employee-benefit funds pursuant to a collective-bargaining agreement "constitutes a violation of ERISA"), *report and recommendation adopted*, 2011 WL 5402898, at *1 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting report and recommendation) ("The allegations in plaintiff's complaint establish the elements of liability required to state a

claim under section 515 of ERISA . . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

III.    Damages, Attorney's Fees and Costs, and Injunctive Relief

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see, e.g.*, *Captre Elec. Supply Co.*, 2015 WL 5316257, at *3 (stating that, in an ERISA withdrawal liability action, "[a]n evidentiary hearing is not necessary when the court

relies upon detailed affidavits and documentary evidence to calculate the damage award" (quotations omitted)).

A.  Withdrawal Liability

Plaintiffs seek withdrawal liability in the amount of $61,907.[4]  (Brock Decl. ¶ 28; Calculation of Withdrawal Liability Principal & Interest ("Withdrawal Liability Calcs."), attached as Ex. L to Brock Decl., Dkt. No. 16).

"[T]o recover for withdrawal liability from an employer, a plan must notify the employer of the amount of liability, include with the notice a schedule for payment, and demand payment in accordance with the included schedule." *Captre Elec. Supply Co.*, 2015 WL 5316257, at *4; *Levy Bros. Frocks, Inc.*, 846 F.2d at 881 ("When an employer withdraws from a multiemployer plan, the plan sponsor, that is, the entity maintaining the plan, must determine the amount of the employer's withdrawal liability, notify the employer of the amount and make a demand for payment.").  "After receiving notice of withdrawal liability from the plan, an employer must make payments according to the plan's schedule[.]" *Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729, 2009

---

[4] This differs from the amount of $39,940 initially requested in the Complaint, representing past due monthly withdrawal liability payments from June 1, 2019 through January 1, 2021.  (*See* Compl. ¶ 29).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  However, Rule 54(c) is not violated by an award "of damages that accrued during the pendency of [an] action," if "such damages were requested in plaintiffs' Complaint[.]" *King v. STL Consulting, LLC*, No. 05-CV-2719, 2006 WL 3335115, at *5 (E.D.N.Y. Oct. 3, 2006).  In their Prayer for Relief, Plaintiffs request that the Court order Defendant to "pay to the Pension Fund all subsequent monthly installment payments through the date of judgment in accordance with the Pension Fund's April 3, 2019 notice and demand for payment."  (Compl. Prayer for Relief at 8).  The Court therefore proceeds with its analysis based on a demand for $61,907, which is calculated through December 2021, the month in which the second motion for default judgment was filed.  The Court also recommends the Clerk add $1,997 per month from January 1, 2022 until the date judgment is entered.

WL 2160536, at *3 (E.D.N.Y. July 17, 2009).[5] "If the employer fails to make payments consistent with [this] procedure . . . , the plan sponsor must again notify the employer of its default and, if not cured within 60 days of receiving notice of nonpayment, the fund is entitled to immediate payment of the employer's entire withdrawal liability, in addition to accrued interest on the total outstanding liability." *Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 97–98 (E.D.N.Y. 2015) (adopting report and recommendation) (quotations omitted); *see* 29 U.S.C. § 1399(c)(5).

The Fund notified Mrs. Maxwell's Bakery by letter that it owed $349,995 in withdrawal liability. (Compl. ¶ 24; Demand for Payment at 1). The Fund attached to its letter a Withdrawal Liability Worksheet demonstrating its calculations according to the formula set forth in section 4211 of ERISA. (Demand for Payment at 3–5). In that same letter, the Fund provided a payment schedule and advised Mrs. Maxwell's Bakery that it would be in default if it did not make a payment within 60 days. (*Id.* at 1–2; Compl. ¶ 25). Mrs. Maxwell's Bakery failed to make the first payment due on June 1, 2019. (Compl. ¶ 26).

There is no indication in the record that the Fund subsequently notified Mrs. Maxwell's Bakery of its default in a separate correspondence as required by ERISA. Nonetheless, the Court does not find this defect fatal. "[T]he filing of a civil complaint can constitute sufficient notice under [29 U.S.C.] § 1399." *Ferrara v. Happy Time Trucking, LLC*, 436 F. Supp. 3d 606, 615 (E.D.N.Y. 2020) (quoting *Labarbera v. United Crane and Rigging Servs., Inc.*, No. 08-CV-3274, 2011 WL 1303146, at *3 (E.D.N.Y.

---

[5] At this stage, there are "[v]arious statutory provisions [that] afford the employer the opportunity to contest or challenge the plan's assessment of the employer's liability, or to request more information." *Daniello*, 2009 WL 2160536, at *3 (citing 29 U.S.C. §§ 1399(b)(2) & 1401).

Mar. 2, 2011) (collecting cases)).  Despite having been given sufficient notice, Mrs. Maxwell's Bakery has not made any subsequent installment payments.  (Compl. ¶ 26).

This is sufficient for the Court to determine the amount of withdrawal liability to be $61,907 and award Plaintiffs that amount.  *See, e.g.*, *Gesualdi v. Nacirema Indus. Inc.*, No. 16-CV-4159, 2017 WL 9487171, at *2 (E.D.N.Y. Aug. 31, 2017) ("The Fund prepared a report based on the formula set forth in ERISA § 4211(b), determined the amount of Industries' withdrawal liability to be $752,098.00, notified Industries of the amount and demanded payment, but Industries did not respond.  Nor has it opposed the motion for default judgment.  Accordingly, based on Industries' failure to respond to the complaint, which sufficiently pleads a claim for withdrawal liability, the court recommends that the plaintiffs' default judgment be entered."), *report and recommendation adopted*, 2017 WL 4326049, at *3 (Sept. 28, 2017); *Captre Elec. Supply Co.*, 2015 WL 5316257, at *5 ("The record does not need to include evidence supporting Finkel's calculation of withdrawal liability because Captre's liability arises from its failure to respond to earlier demands and as a result, the amount of withdrawal liability demanded became due and owing."); *Daniello*, 2009 WL 2160536, at *4–*5 (finding that ERISA "mandates that [withdrawal liability] is due by virtue of the notice of that specific amount provided to the employer by the Fund").[6]

B. <u>Delinquent Contributions</u>

---

[6] Plaintiffs submitted a breakdown of their calculations, (*see* Demand for Payment at 3–5), which further supports the amount sought.  *See, e.g.*, *Nacirema Indus. Inc.*, 2017 WL 9487171, at *2 (awarding plaintiff withdrawal liability in the amount determined by the Fund's report).  In simple math, Plaintiffs arrived at their calculation by multiplying the monthly withdrawal liability installment payment of $1,997 by 31, representing the number of months in the time period of June 1, 2019 through December 1, 2021.

Plaintiffs seek a total of $5,170.09 in delinquent ERISA contributions, composed of (1) funds due following an audit of $569.25; and (2) unpaid contributions due pursuant to the Fund's Rehabilitation Plan of $4,600.84.  (*See* Calculation of Total Damages, attached as Ex. O to Brock Decl., Dkt. No. 16; Audit Report; Default Schedule of Contributions Analysis, attached as Ex. H to Brock Decl., Dkt. No. 16).

The Court first turns to the alleged audit deficiency.  In support of its figures, the Fund submitted an audit report for the period of January 1, 2014 to December 31, 2016 conducted by Bond Beebe, an independent certified public accounting firm.  (*See* Audit Report).  Deficiencies were discovered in the year 2014 only.  (*Id.* at 4).  The Court has reviewed the audit and confirmed the calculations therein in the chart below, namely the amounts due based on days worked and rates provided by the 2011–2015 CBA as modified by the 10% statutory surcharge discussed below.

| Name | Contractual Rate | Contractual Rate + Statutory Surcharge | Unreported Days | Contributions Owed |
|---|---|---|---|---|
| Tavares, Tania | $14.72 | $16.192 | 5 | $80.96 |
| Tavares, Tania | $15.18 | $16.698 | 5 | $83.49 |
| Yela, Luis | $14.72 | $16.192 | 25 | $404.80 |

Total: $569.25

Having no basis to conclude that the underlying rates or days worked are incorrect, the Court recommends awarding $569.25 in unpaid contributions.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Envtl. Grp. Inc.*, No. 18-CV-5791, 2019 WL 5693916, at \*6 (E.D.N.Y. Aug. 30, 2019) (recommending an award of the total delinquent contributions requested after "independently calculat[ing] and confirm[ing] the amounts due based on hours worked and rates provided by the Wage Scale

Schedules" supplied by the plaintiffs), *report and recommendation adopted*, Order (Mar. 31, 2020); *Loc. No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr., Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Funds, Scholarship Fund & Other Funds v. Brookman Constr. Co.*, No. 12-CV-2180, 2013 WL 5304358, at *3 (E.D.N.Y. Sept. 19, 2013) (adopting report and recommendation) (awarding delinquent contributions based on the submission of an affidavit from an auditor, a copy of the audit, and a copy of the collective-bargaining agreement); *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742, 2013 WL 2120338, at *5 (E.D.N.Y. Apr. 3, 2013) (recommending an award of unpaid contributions based on an audit that "was prepared by 'comparing gross wages in the payroll records with Form 941, WT4-B, NYS-4, W-2 totals; [and] comparing wage rates in employer's payroll records with hourly rates set forth in union wage schedules'" (quoting a factual affirmation submitted with the motion for default judgment)), *report and recommendation adopted*, 2013 WL 2120318, at *3 (May 15, 2013).

Turning next to the amounts due pursuant to the Rehabilitation Plan, some background is first appropriate.  ERISA was amended by the Pension Protection Act of 2006 to incorporate "measures designed to protect and restore multiemployer pension plans in danger of being unable to meet their pension distribution obligations in the near future." *Trs. of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co.*, 692 F.3d 127, 130 (2d Cir. 2012).  Under 29 U.S.C. § 1085, certain rules apply to plans that are characterized as either "endangered" or "critical" in a particular year.  A plan is "endangered" if, for example, it is less than 80% funded in that plan year.  29 U.S.C. § 1085(b)(1)(A).  A plan is in "critical" status if, for example, it is less than 65% funded in that plan year, and its assets and contributions, as calculated pursuant to a formula, are

insufficient to pay benefits in the plan year and the following 6 years.  *See id.*
§ 1085(b)(2)(A).  If a plan falls into critical status, the plan sponsor must notify the
participating employers, and each employer must contribute an additional 5% of the
contribution amount due under the applicable CBA during the initial critical year, and
10% for each succeeding plan year.  *See id.* § 1085(b)(3)(D), (e)(7).  Additionally, the
plan sponsor must adopt a rehabilitation plan to restore its financial health through new
schedules of reduced benefits and increased contributions from which participating
employers may select while negotiating collective bargaining agreements.  *Id.* § 1085(e).

In March 2012, the Fund was certified to be in "critical status"; contributing
employers were required to pay a statutory surcharge equal to 5–10% of their
contractual contribution rates.  (Compl. ¶ 19).  In November 2012, the Trustees adopted
a Rehabilitation Plan, which included two schedules of contribution increases and
benefit reductions, known as the "Preferred Schedule" and the "Default Schedule."  (*Id.*
¶ 20; Rehabilitation Plan, attached as Ex. G to Brock Decl., Dkt. No. 16).  Mrs. Maxwell's
Bakery opted to pay pursuant to the Preferred Schedule, effective as of January 31,
2015,[7] thereby agreeing to pay a 5% compounded annual contribution rate increase in
addition to the statutory surcharge.  (Compl. ¶¶ 20–21; PPA Schedule Election Form,
attached as Ex. B-2 to Brock Decl., Dkt. No. 16; 2015–2019 CBA, Schedule A, § 2(C)(1)).
The Default Schedule would have required a 10% compounded annual contribution rate
increase in addition to the statutory charge.  (Rehabilitation Plan at 17).  The
Rehabilitation Plan remains in effect.  (Compl. ¶ 20).

---

[7] Contrary to the PPA Schedule Election Form, the Complaint alleges that the
Preferred Schedule became effective one day later on February 1, 2015.  (Compl. ¶ 21).

Section VI.E of the Rehabilitation Plan provides that if an employer voluntarily ceases participation in the Fund and had "previously elected the Preferred Schedule, [it] will become retroactively subject to the Default Schedule of contributions for the affected Account as of the date that the Preferred Schedule election took effect." (Rehabilitation Plan at 24–25). Given Mrs. Maxwell's Bakery's withdrawal from the Fund it became subject to the Default Schedule as of January 31, 2015, the date of its election.

Plaintiffs, however, are not entitled to the $4,600.84 they seek because they fail to provide adequate supporting documentation. Brock's Declaration provides: "The Pension Fund has calculated the difference between the contributions that Defendant remitted from February 1, 2015 to November 24, 2018 at the Preferred Schedule rates and the contributions that it retroactively owed at the Default Schedule rates." (Brock Decl. ¶ 23). The attached exhibit, Exhibit H, appears to be a spreadsheet calculating the contribution shortage. (*See* Default Schedule of Contributions Analysis). Yet a separate exhibit that appears to be a comprehensive summary of all contributions paid by Mrs. Maxwell's Bakery is at odds with Exhibit H. (*See* Recap of Pension Plan Contribution History of Selected Accounts from Ownership Code 1902 ("Contribution History"), attached as Ex. J to Brock Decl., Dkt. No. 16). This Contribution History differs in several important respects. For example, the total amount of contributions paid by Mrs. Maxwell's Bakery for each calendar year as recorded on the Contribution History differs from the Default Schedule of Contributions.

Other aspects of the Default Schedule of Contributions render it unreliable. For example, it includes figures for 2014. Yet, the Preferred Schedule only took effect on January 31, 2015. (*See* PPA Schedule Election Form). The Schedule also lists a

contribution shortage of $120.80 for May 2014, (*see* Default Schedule of Contributions Analysis at 1), which was not recorded in the audit report itself.  (*See* Audit Report at 5). Because the Default Schedule of Contributions is unreliable, the Court declines to award damages based on it, and only awards the late contributions sought of $569.25.  *See, e.g.*, *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 21-CV-02518, 2022 WL 4642735, at *5 (E.D.N.Y. Sept. 15, 2022) (declining to recommend an award of damages in ERISA default judgment action because "a number of significant errors [prevented the] Court from accurately recalculating" damages), *report and recommendation adopted*, 2022 WL 4662723, at *1 (Sept. 30, 2022); *UFCW Loc. 50 Pension Fund v. Food Depot, Inc.*, No. 16-CV-6197, 2018 WL 1135626, at *6 (E.D.N.Y. Feb. 7, 2018) (denying damages because "the Court has uncertainties about the underlying calculations, which, without the benefit of substantiating documentation, the Court cannot reconcile"), *report and recommendation adopted*, 2018 WL 1136091, at *1 (Feb. 28, 2018).

    C.  Interest

        i.  Withdrawal Liability

Because withdrawal liability is "treated in the same manner as a delinquent contribution," 29 U.S.C. § 1451(b), ERISA provides for recovery of interest, liquidated damages, and reasonable attorney's fees and costs on withdrawal liability payments.  29 U.S.C. § 1132(g)(2); *see Daniello*, 2009 WL 2160536, at *4 ("[T]he items of damages available under ERISA are the same for unpaid withdrawal liability as for any other delinquent monetary contribution.").

As to interest on the withdrawal liability, "ERISA directs courts to use the 'rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.'"

*Daniello*, 2009 WL 2160536, at *6 (quoting 29 U.S.C. § 1132(g)(2)); *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110, 2015 WL 1248560, at *4 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation) ("29 U.S.C. § 1132(g)(2) allows an award of interest at the rate provided by the relevant plan, as does the regulation applicable to withdrawal liability.").  "ERISA provides for such an award of interest on outstanding withdrawal liability from the 'due date of the first payment which was not timely made.'" *Captre Elec. Supply Co.*, 2015 WL 5316257, at *5 (quoting 29 U.S.C. § 1399(c)(5)).

Defendant's first monthly installment was due to the Fund on June 1, 2019. (Demand for Payment at 2).  Plaintiffs seek $6,296.71 in interest on the withdrawal liability from June 1, 2019 through December 31, 2021.  (Brock Decl. ¶ 30; Withdrawal Liability Calcs.).

Under 29 C.F.R. § 4219.32(b), it is appropriate for multiemployer plans to use interest rates set by the Pension Benefit Guaranty Corporation (PBGC) unless rules adopted by the plan provide otherwise.  (Brock Decl. ¶ 29; PBGC Interest Rates for Overdue or Defaulted Withdrawal Liability, attached as Ex. K to Brock Decl., Dkt. No. 16).  *See Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Crossbay Seashell Fish Mkt., Inc.*, No. 19-CV-1722, 2019 WL 4418884, at *4 (E.D.N.Y. Aug. 30, 2019) ("In the absence of a plan document specifying how interest is to be assessed, courts have approved the use of PBGC rates to calculate interest on unpaid withdrawal liability." (collecting cases)), *report and recommendation adopted*, 2019 WL 4415621, at *1 (Sept. 16, 2019).  After careful scrutinization of Plaintiffs' supporting papers, it appears the Fund did not prescribe any rate of interest to be applied to withdrawal liability.  As such, the PBGC interest rates govern.  The applicable PBGC interest rates per annum are as follows:

| Time Period | Rate |
|---|---|
| 4/1/19–6/30/19 | 5.50% |
| 7/1/19–9/30/19 | 5.50% |
| 10/1/19–12/31/19 | 5.25% |
| 1/1/20–3/31/20 | 4.75% |
| 4/1/20–6/30/20 | 3.25%[8] |
| 7/1/20–9/30/20 | 3.25% |
| 7/1/20–9/30/20 | 3.25% |
| 10/1/20–12/31/20 | 3.25% |
| 1/1/21–3/31/21 | 3.25% |
| 4/1/21–6/30/21 | 3.25% |
| 7/1/21–9/30/21 | 3.25% |
| 10/1/21–12/31/21 | 3.25% |

*Late or Defaulted Withdrawal Liability*, PBGC, https://www.pbgc.gov/prac/interest/oodwl (last visited Nov. 28, 2022).

A review of the calculations reveals that the Fund used the following formula:

principal withdrawal liability x (PBGC annual rate for the relevant time period/365) x

days in a period = accrued interest.  That interest, based on the principal withdrawal

liability of $61,907, is as follows:

| Time Period | Daily Interest[9] | No. of Days in Period[10] | Interest |
|---|---|---|---|
| | | | |

---

[8] While the interest rate for April to June 2020 was 4.25% at the time Plaintiffs were preparing their initial motion for default judgment, that rate has since been revised and reduced to 3.25%, as indicated on the PBGC website, to reflect a change made by the Federal Reserve.

[9] The daily interest values reflected in this table and the tables that follow are rounded to the nearest hundredth.  In calculating the ultimate total interest, the Court did not use these rounded figures.

[10] In calculating interest on withdrawal liability, the Fund excluded the last day in each time period, such that one day's worth of interest in each period is not factored into the total calculation.  (*See* Withdrawal Liability Calcs.).  For example, interest for June 1 through June 30, 2019—*i.e.*, the entire month of June—is computed based on 29 days rather than 30.  The same is true for the Fund's calculation of interest on delinquent contributions.  The Court relies on the Fund's computation of the number of days, which yields a lower amount, in awarding interest through December 31, 2021.

| 6/1/19–6/30/19 | $9.33 | 29 | $270.53 |
| 7/1/19–9/30/19 | $9.33 | 91 | $848.89 |
| 10/1/19–12/31/19 | $8.90 | 91 | $810.30 |
| 1/1/20–3/31/20 | $8.06 | 90 | $725.08 |
| 4/1/20–6/30/20 | $5.51 | 90 | $496.10 |
| 7/1/20–9/30/20 | $5.51 | 91 | $501.62 |
| 10/1/20–12/31/20 | $5.51 | 91 | $501.62 |
| 1/1/21–3/31/21 | $5.51 | 89 | $490.59 |
| 4/1/21–6/30/21 | $5.51 | 90 | $496.10 |
| 7/1/21–9/30/21 | $5.51 | 91 | $501.62 |
| 10/1/21–12/31/21 | $5.51 | 91 | $501.62 |

Total: $6,144.07

Consistent with the calculations above, the Court respectfully recommends an award of $6,144.07 in interest from June 1, 2019, the date of the first delinquent withdrawal liability payment, through December 31, 2021.

Based on the PBGC interest rate for 2022, Plaintiffs are also entitled to interest in the amount of $1,621.88, calculated from January 1, 2022 through September 30, 2022, as detailed in the table below. The Court also recommends that the Clerk award interest of $9.33 per day calculated from October 1, 2022 until the date judgment is entered.

| Time Period | Rate | Daily Interest | No. of Days in Period | Interest |
|---|---|---|---|---|
| 1/1/22–3/31/22 | 3.25% | $5.51 | 90 | $496.10 |
| 4/1/22–6/30/22 | 3.25% | $5.51 | 91 | $501.62 |
| 7/1/22–9/30/22 | 4% | $6.78 | 92 | $624.16 |
| 10/1/22–12/31/22 | 5.50% | $9.33 | -- | -- |

Total: $1,621.88

ii. Delinquent Contributions

Plaintiffs are entitled to interest on delinquent contributions at the rate provided by the applicable employee benefit plan. 29 U.S.C. § 1132(g)(2)(B). The Trust Agreement provided that an employer may be required to pay "such reasonable rate of

23

interest as the Trustees may fix." (Trust Agreement, art. V, § 4). A Board Resolution adopted by the Plaintiff-Trustees provided that, as of June 23, 2017, the "interest rate on delinquent contributions outstanding during any six-month period beginning each January 1 or July 1 shall be equal to the average prime rate charged by commercial banks for short-term business loans, as determined by the Federal Reserve for the six months ending on the preceding December 31 or June 30, as applicable, rounded to the next one-half percent (½%), plus two percentage points." (Resolution of the Board of Trustees dated June 23, 2017 ("Board Resolution"), attached as Ex. M to Brock Decl., Dkt. No. 16, at 2). Plaintiffs provided a chart outlining the history of delinquency interest rates. (Delinquency Interest Rates, attached as Ex. E to Brock Decl., Dkt. No. 16).

Plaintiffs seek $279.36 in interest on the audit deficiency, calculated from the date of delinquency through December 31, 2021. (Brock Decl. ¶ 16). The auditor assessed interest to be $62.31 as of August 31, 2017, (*see* Audit Report at 2), while the Fund calculated interest to be $69.25 for the same time period. (*See* Calculation of Delinquent Contributions ("Delinquent Contribution Calcs."), attached as Ex. F to Brock Decl., Dkt. No. 16). It appears that the auditor used an interest rate of 3% from January 1, 2012 until July 1, 2017 and a rate of 6% thereafter. (Audit Report at 3). On the other hand, the Fund used a rate of 4% from July 1, 2016 until July 1, 2017.[11] (Delinquent Contribution Calcs.). The Court uses and recommends awarding interest based on the auditor's calculations, because the original deficiency notice to Defendant relied on the audit.

---

[11] This intermediate interest rate is, in fact, listed in the Fund's recorded history of delinquency interest rates. (*See* Delinquency Interest Rates).

Further, it appears that the Fund calculated interest on unpaid contributions by compounding interest monthly. (*See id.*). However, Plaintiffs are not entitled to compound interest. Neither the Board Resolution nor the Collection Policies provide for compound interest. (*See* Board Resolution at 2; Collection Policies, art. III(B)). "Courts in this District regularly decline to award compounded interest in the absence of a plan document providing for compounding," and instead award only simple interest. *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 U.S. Dist. LEXIS 25506, at *26 (E.D.N.Y. Feb. 12, 2020), *report and recommendation adopted*, Order (Mar. 23, 2020). To find the total interest owed for the period of September 2017 through December 2021, the Court multiplies the daily interest by the number of days the contributions were delinquent.[12] That calculation, based on the Court's award of $569.25 in delinquent contributions, is as follows:

| Time Period | Rate | Daily Interest | No. of Days in Period | Interest |
|---|---|---|---|---|
| 9/1/17–12/31/17 | 6% | $0.09 | 121 | $11.32 |
| 1/1/18–6/30/18 | 6.50% | $0.10 | 180 | $18.25 |
| 7/1/18–12/31/18 | 7% | $0.11 | 183 | $19.98 |
| 1/1/19–6/30/19 | 7.50% | $0.12 | 180 | $21.05 |
| 7/1/19–12/31/19 | 7.50% | $0.12 | 183 | $21.41 |
| 1/1/20–6/30/20 | 7.50% | $0.12 | 181 | $21.17 |
| 7/1/20–12/31/20 | 6% | $0.09 | 183 | $17.12 |
| 1/1/21–6/30/21 | 5.50% | $0.09 | 180 | $15.44 |
| 7/1/21–12/31/21 | 5.50% | $0.09 | 183 | $15.70 |

Total: $161.44

---

[12] The Court has verified these interest rates by reviewing a history of the Federal Reserve's bank prime loan rate. *See Bank Prime Loan Rate (DPRIME)*, FRED, https://fred.stlouisfed.org/series/DPRIME (last visited Nov. 1, 2022).

Accordingly, the Court respectfully recommends that Plaintiffs be awarded $161.44 in interest on unpaid contributions, calculated from September 1, 2017 through December 31, 2021.  As detailed below, the Court also recommends that Plaintiffs be awarded $15.53 in interest from January 1, 2022 until June 30, 2022 and that the Clerk award interest of $0.09 per day from July 1, 2022 until the date judgment is entered.

| Time Period | Rate | Daily Interest | No. of Days in Period | Interest |
|---|---|---|---|---|
| 1/1/22–6/30/22 | 5.50% | $0.09 | 181 | $15.53 |
| 7/1/22–12/31/22 | 6% | $0.09 | -- | -- |

### D. Liquidated Damages

Plaintiffs seek $12,381.40 in liquidated damages, which represents 20% of $61,907, the amount of the withdrawal liability through December 31, 2021.  (Brock Decl. ¶ 33; Calculation of Liquidated Damages, attached as Ex. N to Brock Decl., Dkt. No. 16).

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6; 29 U.S.C. § 1132(g)(2)(C).  Recovery of liquidated damages is similarly available for unpaid withdrawal liability.  *Daniello*, 2009 WL 2160536, at *4; 29 U.S.C. § 1451(b) ("[A]ny failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution[.]").  The same is true under the Fund's Collection Policies.  (*See* Collection Policies, art. III(C) ("[T]he amount of liquidated damages shall

be equal to the greater of (a) the interest awarded pursuant to 502(g)(2)(B) of ERISA, or (b) 20 percent of the unpaid contributions (or withdrawal liability) at issue.")).

Under ERISA and the Collection Policies, Plaintiffs are entitled to $12,381.40 in liquidated damages, which is 20% of the withdrawal liability through December 31, 2021, since it is greater than the interest accrued to-date. *See, e.g.*, *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. R & C Transit, Inc.*, No. 16-CV-2481, 2019 WL 2436144, at *6–*7 (E.D.N.Y. Jan. 15, 2019) (awarding 20% of withdrawal liability in liquidated damages under ERISA and Delinquency Policy), *report and recommendation adopted*, 2019 WL 2436115, at *1 (Feb. 14, 2019).

E.  Attorney's Fees

Plaintiffs seek $9,060 in attorney's fees for 34.25 hours of work on the case. (*See* Decl. of Patricia McConnell ("McConnell Decl."), Dkt. No. 16, ¶ 12; Att'y Invoice, attached as Ex. A to McConnell Decl., Dkt. No. 16). This includes 24.5 hours billed by of counsel Patricia McConnell at a rate of $330 per hour and 9.75 hours billed by paralegal Amanda Potamitis at a rate of $100 per hour. (*See* Att'y Invoice; McConnell Decl. ¶¶ 5, 7, 11–12).

Pursuant to section 502 of ERISA, where an action is brought by a fiduciary to enforce section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The Trust Agreement and CBAs also provide for attorney's fees if the Fund must litigate to enforce payment obligations. (*See* Trust Agreement, art. V, § 4; *e.g.*, 2011–2015 CBA, Schedule A, § 1(C) ("In the event the Employer fails promptly to pay the contributions required hereunder, the Employer shall pay such collection costs, including but not limited to . . . reasonable attorney's fees[.]")).

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–*5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award. Attorney Patricia McConnell is of counsel to the law firm of Levy Ratner, P.C. (McConnell Decl. ¶ 1). McConnell graduated from the New York University School of Law in 1978, has actively litigated in the federal courts since 1980, and has represented labor unions and employee benefit funds since 1981. (*Id.* ¶ 9). She has served as co-counsel or sole counsel to numerous employer benefit funds. (*Id.* ¶ 10). Paralegal Amanda Potamitis is an "experienced paralegal who joined Levy Ratner in June 2019." (*Id.* ¶ 11). No educational background is given for Potamitis.

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, *e.g.*, *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp.*, No. 17-CV-5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018), and rates ranging from "$200 to $300 for senior associates [and] $100 to $200 for junior associates," *Captre Elec. Supply Co.*, 2015 WL 5316257, at *6.  However, "courts have 'accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'"  *Id.* (quoting *Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738, at *9 (E.D.N.Y. Jan. 28, 2013), *report and recommendation adopted*, 2013 WL 623573, at *1 (Feb. 19, 2013)).  "[C]ourts in the Eastern District have found that $90–$100 is a reasonable fee for paralegals."  *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-375, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019), *report and recommendation adopted*, Order (Mar. 4, 2019); *see also Gesualdi v. Burtis Constr. Co.*, No. 20-CV-4864, 2021 WL 6550952, at *5 (E.D.N.Y. Dec. 28, 2021) (reducing hourly rate of paralegals from $120 to $100), *report and recommendation adopted*, 2022 WL 173548, at *1 (Jan. 19, 2022); *Trs. of Loc. 813 Pension Tr. Fund v. Rizzo Env't Servs. Corp.*, No. 19-CV-6622, 2020 WL 7249289, at *8 (E.D.N.Y. Oct. 31, 2020) (finding rates of $100 per hour for non-attorney support staff to be reasonable), *report and recommendation adopted*, 2020 WL 7021595, at *2 (Nov. 30, 2020).

This district has recently awarded the same attorney, Patricia McConnell, a rate of $330 per hour, and the same paralegal, Amanda Potamitis, a rate of $100 per hour, for work on an ERISA default judgment seeking delinquent contributions and

withdrawal liability.  *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. M & A Baking Corp.*, No. 21-CV-294, 2021 WL 6424603, at *6 (E.D.N.Y. Nov. 10, 2021), *report and recommendation adopted*, 2021 WL 6194720, at *2 (Dec. 30, 2021).  As such, the Court finds that the rates requested for Ms. McConnell and Ms. Potamitis are reasonable.

Turning next to the reasonableness of the time expended, according to the billing records submitted, Plaintiffs' attorneys spent 34.25 hours on the case, consisting of 24.5 hours by McConnell and 9.75 hours by Potamitis.  (Att'y Invoice; McConnell Decl. ¶¶ 5, 7, 11–12).  These hours were documented using detailed contemporaneous time records, (*see* Att'y Invoice), which are required for a court to award attorney's fees.  *See Daniello*, 2009 WL 2160536, at *6 ("This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work.").  Although this is slightly higher than the amount of time typically spent on such motions, it is within the range of reasonable hours expended in similar ERISA cases involving default judgment.  *See, e.g.*, *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (finding 32 hours of attorney work and 7.4 hours of paralegal work to be reasonable), *report and recommendation adopted*, 2022 WL 580959, at *1 (Feb. 24, 2022); *Gesualdi v. Torretta Trucking Inc.*, No. 10-CV-1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (finding "22.8 hours at attorney rates and 6.3 hours at paralegal rates to be reasonable" in an ERISA default judgment action), *report and recommendation adopted*, 2012 WL 1103179, at *1 (Apr. 2, 2012); *Gesualdi v. Tapia Trucking LLC*, No. 11-CV-4174, 2012 WL 7658194, at *5 (E.D.N.Y. Oct. 15, 2012)

(approving a total of 32.4 hours billed), *report and recommendation adopted*, 2013 WL 831134, at *1–*2 (Mar. 6, 2013). The Court thus recommends a total of $9,060 be awarded in attorney's fees, as outlined in the chart below.

| Name | Position/Title | No. of Hours | Amount Owed |
|---|---|---|---|
| Patricia McConnell | Of Counsel | 24.5 | $8,085 |
| Amanda Potamitis | Paralegal | 9.75 | $975 |

F. Costs

Plaintiffs seek reimbursement for costs consisting of $402 in court filing fees and $102.50 in service of process fees. (*See* McConnell Decl. ¶¶ 13–14). ERISA provides that "[a]n award of reasonable costs is mandatory in a successful action to recover delinquent contributions." *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1078470, at *1 (Mar. 30, 2012); *see also* 29 U.S.C. § 1132(g)(2)(D). Recoverable costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *Detore Elec. Constr. Co.*, 2012 WL 1077796, at *12 (alteration in original) (quoting *Trs. of the Road Carriers Loc. 707 Welfare Fund v. Goldberg*, No. 08-CV-884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (adopting report and recommendation)). Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).

Filing fees are recoverable without supporting documentation if verified by the docket. *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017)

(stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902, at *2 (May 9, 2017).  Since the docket indicates that the $402 filing fee was paid, (*see* Dkt. No. 1), the filing fee should be awarded.[13]

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714, at *1 (Oct. 18, 2017); *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058, at *1 (Sept. 19, 2016).  Plaintiffs provided a process server invoice indicating the cost of service of the summons and Complaint was $102.50.  (*See* Monthly Statement, attached as Ex. B to McConnell Decl., Dkt. No. 16).  The Court finds it appropriate to award this cost.

Therefore, the Court respectfully recommends an award of $504.50 in costs.

G. Post-Judgment Interest

Plaintiffs seek an award of post-judgment interest at the statutory rate.  The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory

---

[13] Plaintiffs submitted a receipt confirming payment of a filing fee with the tracking ID "ANYEDC-1401306."  (*See* Payment Confirmation, attached as Ex. B to McConnell Decl., Dkt. No. 16).  However, this ID does not correspond to the receipt number reflected on the docket.  (*See* Dkt. No. 1).

on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'" *Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends post-judgment interest be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

H. Injunctive Relief

Plaintiffs also seek an injunction requiring Defendant to "remit all subsequent monthly installment payments . . . as they become due in accordance with the Pension Fund's April 3, 2019 notice of assessment of withdrawal liability and demand for payment." (Proposed Judgment, Dkt. No. 16, ¶ (f); Pls.' Mot. at 1–2). Section 502 of ERISA entitles plaintiffs to "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).

A "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs have not alleged any irreparable harm nor provided the Court with any documentation to support their claim for relief. Further, courts in this district rarely

award injunctive relief in ERISA default judgment actions short of requiring an audit of books and records. *See, e.g.*, *Labarbera v. Andrew's Trucking Corp.*, No. 06-CV-6243, 2007 WL 4224631, at *5 (denying plaintiffs' request for an injunction ordering defendant to comply with the applicable CBA because plaintiffs failed to provide sufficient documentation demonstrating they will suffer irreparable harm or that the remedy at law is inadequate). As such, the Court respectfully recommends that Plaintiffs' request for an injunction be denied. *See, e.g.*, *Grodotzke v. Seaford Ave. Corp.*, 17 F. Supp. 3d 185, 195 (E.D.N.Y. 2014) (finding that plaintiffs' "conclusory allegations" were insufficient to establish that "the lack of [an] injunction will create irreparable harm").

<u>CONCLUSION</u>

For the reasons described above, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted in part and denied in part, and Mrs. Maxwell's Bakery, Inc. be ordered to pay the following:

1. $61,907 in withdrawal liability and an additional $1,997 per month from January 1, 2022 until the date judgment is entered;

2. $569.25 in unpaid contributions;

3. $7,765.95 in interest on withdrawal liability through September 30, 2022 and an additional $9.33 per day from October 1, 2022 until the date judgment is entered;

4. $239.28 in interest on unpaid contributions through June 30, 2022 and an additional $0.09 per day from July 1, 2022 until the date judgment is entered;

5. $12,381.40 in liquidated damages;

6.  $9,060 in attorney's fees;

7.  $504.50 in costs; and

8.  Post-judgment interest in an amount to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Mrs. Maxwell's Bakery, Inc. and file proof of such service on the record.

SO ORDERED.

*Sanket J. Bulsara*  December 6, 2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York